The first case, which is Trina Solar v. Jasmine Solar, counsel. Good morning. Good morning. May it please the court. This court, this case should have been decided as a matter of law in favor of Jasmine based on the plain meaning of the explicit terms in the four corners of the Trina JRC agreement. Just beginning with the arbitration clause, clause 11.1 on the appellate's appendix on page 80, reads in a relevant part, any dispute or controversy or difference arising out of or in connection with this contract between the parties hereto shall be submitted to binding arbitration. So Jasmine can be subject to the arbitration clause only if Jasmine is a party to this agreement. But the contract itself defines parties on the first page of the contract and the last page of the contract as the seller, Trina, and the buyer, Jasmine. You would agree? I'm sorry. We have a large body of law that says you can be bound, even if you don't sign, if you're the beneficiary, if you have given someone the right to act as your agent. We have that law. It's not as rigid as you describe it. It is absolutely the case, Your Honor, that if the court were to find that JRC was exercising its authority to bind Jasmine when it signed this contract, that then Jasmine would be legally the party under this contract and would be subject to the arbitration clause. But, of course, JRC was not exercising its capacity as an agent for Jasmine when it signed the contract. That's the point that the district court didn't engage. It simply addressed the question of whether JRC had the authority, not whether it was exercising it. Why isn't that a reason for further development of the record? Because — excuse me, Your Honor. Is that what you're suggesting? No, Your Honor. I believe, as a matter of law, simply applying black-letter New York interpretation doctrine determines unequivocally and unambiguously that JRC signed in its individual capacity only and not as an agent for Jasmine. You yourself just, I think, acknowledged that the district court didn't get to that issue. If it had gotten to the — addressed that issue, it would have done it as a matter of law, Your Honor. That is our position. Simply by examining the plain meaning of the terms of the contract, you can see that JRC is acting in its own individual capacity. Jasmine is mentioned as a prospective guarantor in 551. Did Jasmine get the solar panels? Jasmine did get the solar panels. They're a downstream user, but it was Trina that was driving the transaction, structured the negotiation, drafted it, and insisted that JRC, not Jasmine, be the buyer for Trina's own purposes. But are you saying, then, that absent an inscription on the signature line of the contract, that the buyer, JRC Services, was acting as agent, that the face of the contract suggests that it was the principal or establishes even that it's the principal? Well, under this Court's precedent in Israel against Chabra, the capacity in which a signatory signs is very good evidence of whether it's signing as an agent. But you can look to other provisions, and in particular, the Guarantee Clause 5.51 states that JRC shall — it's a prospective provision — that JRC shall secure from its parent, Jasmine, a guarantee. Now, if JRC were acting as Jasmine's agent, then that would be the effective equivalent of Jasmine promising that it will secure a guarantee from itself, its own parent. Of course, it makes no semantic sense that Jasmine can't be its own parent. That's what the clause would say if JRC were acting as Jasmine's agent. I don't think the clause says shall secure. It just says buyer's parent company shall guarantee. Right. It's actually the same, suggesting that there's an involvement, even as of the effective date, by the parent company. The contract is one in which JRC is undertaking the obligation to secure from its parent, Jasmine, a guarantee, a guarantee which never was made and wasn't Jasmine's obligation to make. Jasmine didn't sign it. The point is that if you simply look at that provision and ask yourself, if JRC were Jasmine's agent, why would 5.51 exist? It makes no semantic sense because Jasmine can't be its own parent. And it serves no purpose because the primary obligor would be Jasmine. So JRC signing on — Did you make these arguments before, Judge Capone? Some of these arguments were made — But this argument. Yes. We have briefed this argument before. And she seemed to think that JRC could be — that there could be some belt and suspenders argument that we've been unable to understand. There are no suspenders provided by a guarantee by a primary obligor of its own obligation. You would have to have Jasmine serving as a separate, distinct entity that's not bound as a primary obligor on the contract in order for that guarantee to make any sense. You're saying that Judge Capone had no occasion to look at the other agreement called Arrangement of Rights and Obligations that had been procured that gave Jasmine authority to purchase — in which Jasmine expressed authorization to JRC to purchase modules on its behalf and to act as an agent in all things related to such a purchase. The Arrangement of Rights and Obligations, Your Honor, was taken into account by the district court. And we agree that it establishes that JRC had the actual authority to bind Jasmine in such a contract. But this is three months later, and that arrangement itself in paragraph 3 contemplates two ways in which JRC might secure this purpose. First, it could sign as an agent. Second, it could sign in its own capacity and have Jasmine backstop that obligation as a guarantor. And it is Trina that decided that's the way it wanted to proceed. There is another alternative theory that I'd like you to address, pursuant to which the district court determined that your client was bound by the arbitration agreement. That's the direct benefits theory of estoppel. Can you address that? Absolutely. And would you more specifically address how it is that we can view this record and conclude that Jasmine at some level, in some degree, didn't rely on the contract? Your Honor, even if, contrary to our argument, this court were to hold that Jasmine was a direct beneficiary bound under the direct benefits theory of estoppel to the Trina JRC contract, that would not solve the problem that the arbitration clause in that contract is, by its terms, restricted in scope to the parties to the agreement. And as you know, the direct benefits estoppel theory does not transform a non-signatory non-party into a party. It simply binds the non-signatory to the contract. But the terms of the contract still must be read under black-letter law. And here it says that the arbitration clause applies to disputes between the parties. So even if direct benefits estoppel bound Jasmine to the contract, it could not bind Jasmine to this arbitration clause. That's, in fact, what the Supreme — You never said that. Yes. You're asking for a bright-line rule that I think that if you are not a party, as stated in the contract, then the direct benefits theory really doesn't apply to you. Your Honor, if one examines all of the direct benefits estoppel cases in this circuit, whether the court found that the non-signatory was a direct beneficiary or an indirect beneficiary, in each case it was not a moot inquiry because the arbitration clause itself was quite broad, broad enough to include the non-signatory. This is a bespoke, narrow arbitration clause that Trina wrote for its own purposes to exclude Jasmine from the arbitration clause when it drafted it. And it says it's between the parties here, too. The district court in Cerebri — Excuse me. You just made a representation that Trina wrote this clause explicitly to exclude Jasmine? Yes. Trina was the drafter of the contract. Jasmine just signed it. But on what basis do you say it was written explicitly to exclude Jasmine from the arbitration provision? Because it's designed to explicitly restrict — You're just interpreting the text. Yes. I'm just looking at the text, and they drafted it. You read between the parties because, of course, one could interpret parties in a more relaxed point of view given the arrangement of rights and obligations. Because who is getting the delivery? Who is making the payment? And so on. I think it's absolutely crucial to understand that Jasmine's never denied from the start and through this litigation to this point that the purpose of the transaction was to secure solar panels. For Jasmine. For Jasmine. And Jasmine was initially ready — standing ready and willing to be the buyer. But Trina insisted because its insurer, Sinashore, found that Jasmine, which was a new company, didn't have a track record. It wouldn't insure it. And Trina's representative, its agent, Dalla Piazza, wanted his commission, and that required it to be a U.S.-U.S. sale. So Trina said, we need a U.S. entity that's insurable to do this deal, and we want Jasmine out of it. And their whole purpose, ab initio, from drafting this contract, once they decided that, was to exclude Jasmine and make this a contract exclusively between JRC and Trina. Why did it have to be exclusively to secure those purposes? If you add on a U.S. entity that is insurable, did the presence of the Australian entity destroy the benefits that were aimed at? Certainly they could get the insurance as long as JRC is liable in its individual capacity. But then if you go back and look at the contract, that doesn't solve the commission problem they were trying to serve. And if you go back and look at the actual drafting of the contract, we don't just have the guarantee clause, but we have a half dozen other clauses that make it absolutely clear on plain meaning that this is a two-party contract, Your Honor. All right, counsel, you have reserved three minutes for rebuttal. Thank you. We'll hear from Trina, and then we'll hear from you again. Good morning. May it please the court. You know, when we look at this entire case, I think the record's very clear, and the record goes all the way back to the early stages of this matter, when the arbitration was compelled and when the arbitration began. And the record reflects, and let's not make any question about this, that this was a contract that explicitly involved Jasmine Soller. There's been a lot of discussion that somehow Jasmine Soller was not a party to this contract, that Jasmine Soller was not an intended beneficiary to this contract. But the record really speaks otherwise. We may agree with you with respect to the overall transaction and the kind of lengthy negotiations and all the extraneous evidence that's been produced. But, you know, arbitration is a matter of agreement, and we've been very clear about applying that principle over time. And if you are to start and just look at the language of the actual operative contract, you know, we've just been hearing arguments about how parties are strictly defined to be the two, JRC and Trina. The arbitration clause speaks to arbitration between the parties. It refers to a guarantee that will be executed or should be procured effective the same date. But Jasmine is nowhere to be seen. Why do we even have to look beyond that? Why aren't we just bound to look at the contract itself rather than the course of negotiations over time? Because I think, Your Honor, what you're referring to is a situation where a non-signatory can be bound to an arbitration clause in a contract. And the law is very, very well developed on that. You can get at the non-signatory in a number of ways. And both the arbitrator, Sussman, and Judge Caproni, in reviewing the entire record, made a determination that Jasmine was a proper party. I'm asking, why do we get past the contract itself? Because the law allows you to get past it. And what about the law allows us to get past the contract? The entity didn't sign. JRC didn't sign as agent. We have an agreement. We have an arbitration that followed as a result of that. And Jasmine is not a party. Jasmine doesn't need to sign as an agent. Jasmine, I beg your pardon, JRC does not need to sign as an agent because we have the documents, the arrangement of rights and obligations, which specifically made. Again, what takes us past the contract that establishes the arbitration to other documents? What is ambiguous about this agreement? There's nothing ambiguous about the agreement, but that doesn't mean that a non-signatory to this contract can't be bound to it. That's the decision. I thought your argument was that there are, at least in this case, two theories. One is an agency theory, and another is the estoppel theory that we discussed with your adversary, pursuant to which a non-signatory might be bound by an arbitration clause. Is that right? That's correct. And Judge Caproni made a determination that JRC was acting as an agent for Jasmine in this case. That was very clear, and the record reflected that. Counsel, Judge Cornyn is asking why do we turn to these theories when we have two parties plainly denominated in the contract? Why do we go beyond that? Because it's illogical to do otherwise. Every contract is going to be, if it's a two-party contract, there's always going to be two parties to the contract. And so the law permits you then to go outside that to find someone who either on a direct benefits theory. You say that the law permits us. The decisional law does. I haven't finished my question yet. Yes. So when you say that the law permits you to look outside, are you referring to New York law permitting us to look at parole evidence, or are you referring to something else? I'm not saying that you're looking at parole evidence. What you're doing is that you're binding a non-signatory to an arbitration clause within the contract. And the decisional law in this circuit permits you to do that if you can make a finding that that non-signatory can be bound on an agency theory, which has been determined by the district court that in fact they could be, or on a direct benefits theory. So let's not forget that this contract was done for the benefit of Jasmine. All the goods were delivered to Jasmine. Jasmine ordered the goods. Jasmine acted as if it was their contract. In fact, Mr. Starr's name is right on the top of the contract as the Australian contact. So this is a case about Jasmine as being the other party to the contract. What about the argument made by opposing counsel that it was Trina who wanted the contract set up this way? Well, the record will reflect that the contract had gone back and forth. Trina wrote the contract, right? There was a drafting process. And I can tell you what the record reflects, but I can also tell you what happened at the arbitration. I was there. I tried the arbitration. And the record reflects that the contract was a negotiated contract that went back and forth a number of times. And all the negotiations, all the changes that were suggested from the Jasmine side of the equation were suggested by Dr. Starr, the managing director of Jasmine. And at the end of the day, the record will reflect that the contract, JRC, was put in there merely for the convenience of both parties. Trina's salesperson may have wanted JRC there because he wanted an American counterparty. The trade credit insurer may have felt more comfortable with an American counterparty. But also, Jasmine wanted an American counterparty because they were dealing with a taxation issue in Australia. So for Jasmine to stand up here and say this was Trina's whole idea, they only want to contract with JRC. The evidence of the record, as I understand it, or as I saw it, is that Trina was very interested in contracting with JRC only for a number of different reasons having to do with commissions and so on. I think you were alluding to that. And my question is that it starts with the fact that Judge Caproni seems to have just focused on the actual authority issue and not gotten to what I believe, I think at least, is the central issue, which is the intent of the parties. Did the parties intend to bind Jasmine to the arbitration portion of the agreement? Did she address that? Judge Caproni addressed that. I think her opinion does address that. Show me where. Well, I think she's very clear in her opinion when she talks about that JRC had actual authority to act as Jasmine's case. I agree with you. This is page 7. But there's a second step, is there not?  Well, that's the first step, Your Honor. She finds actual authority. I know. I'm asking about the second step. The second step being what? Was there an intent? Intent. I don't know if you need to get to that. Once there's been a finding by the trial court that Judge . . . So you're telling me that all the district court needed to do here was to make a determination about actual authority and do nothing further. End of debate. I think you have to suppose that that was in her mind, that she determined . . . No, no, no, no. So we're not in the business of supposing. That's right. So could you show me where she proceeds to discuss the intent of the parties in connection with arbitration? She also makes it very clear on page 9 that JRC undoubtedly had actual authority to act as Jasmine's case. Well, that's actual authority. Okay. But you find intent from the documents. You find intent from the review of the record. And in the review of the record . . . Your answer to me is that she didn't actually address that specific point. She may not have used the actual word intent, but intent . . . What else would I look to besides the actual word? It comes from the acts of the parties, the documents, the record, the entire record. You know, Judge Capone made it very clear to me at oral argument before her that she was doing a de novo review and that she was going to look at all the evidence in this case. She did that and she made a determination that JRC undoubtedly had actual authority, including when executing the PV sales contract. She made that very clear. She also made it very clear that there was no question that JRC was acting as Jasmine's agent throughout the negotiation, execution, and fulfillment of the contract. That's crystal clear as well. That was determined by her. It was also very clear to the arbitrary assessment as well. And in making that determination, she touches on all these issues, such as the  That was important to her. And undoubtedly . . . where there's evidence in this record that Jasmine actually invoked the contract in connection with making demands for delivery? In this record, the purchase orders were prepared by Jasmine and they were put on Jasmine's letterhead. Wasn't that at the request of Dallapiazza? It may have been, but they were put on their letterhead. Dallapiazza didn't just make up Jasmine's letterhead. Is that the same as invoking the contract? It is invoking the contract. And I think what you're saying over here, Your Honor, is how do they exploit the contract? That's really what it's about. How does the party being sought to be . . . How does the party for which we were seeking to compel arbitrary exploit this contract? They were a direct beneficiary of this contract. Again, let's not make a mistake. This contract was for . . . Is there a difference analytically between exploiting a contractual relationship and exploiting a contract and its provisions? There is possibly, but this is about direct benefits. Why can't we view this as exploiting a contractual relationship, not the actual contractual provisions? Because this is a direct benefit. They had a direct benefit that arose directly out of the contract. I think you're talking about these incidental benefits. In some circumstances, parties do receive a benefit incidentally from the contract. But that isn't the case here. This contract was done solely for the purpose of providing solar panels to Jasmine, Australia. Did Jasmine invoke the contract in demanding prompt delivery? Of course they did. Under the contract, I'm looking from our papers over here, Dr. Starr communicated directly with Trina regarding delivery schedules. Dr. Starr communicated directly with Trina about the solar panels he wanted. But in those communications, did he invoke the contract? He's invoking it right there, Your Honor. He's making demands under the contract. He made a promise to pay under the contract. If you look at the . . . If I want to buy a vacuum cleaner and I get a distributor, I sort of deal with the distributor, and the distributor has got a contract with the manufacturer to buy a bunch of vacuum cleaners, and I say I want my vacuum cleaner, am I invoking the contract or am I just talking to my distributor because I want my vacuum cleaner? Under that scenario, that's a different scenario because I bet . . . I'll tell you, because I bet under your scenario, you didn't negotiate the contract with the manufacturer. I bet under your scenario, you're not using purchase orders under your name under that scenario. I bet under your scenario, you're not calling up the manufacturer and complain to them that the delivery is late. I also bet under your scenario that you're not promising to pay the manufacturer directly, and I'm certainly sure under your scenario that you're not calling up the manufacturer and saying these parts aren't right. That's the distinction. So, you know, I think Mr. Krause suggested this would upend all of these arrangements. This is not going to change the law where all of a sudden Walmart gets hauled into an arbitration agreement between a manufacturer and an importer because under those scenarios, the facts are very different. When I started off, I want to be very clear. Let's not make any mistake. This was a contract between Jasmine and Trina Solar. The names change throughout, arguably for the convenience of the parties, but that also doesn't change the fact that JRC always acted as the agent for Jasmine. That's how it was in the beginning. That's how it was in the negotiation. That's how it was when the deliveries were supposed to happen. So you're saying that when a district court is confronted with a motion to confirm an arbitration award, it doesn't just look at a contract by which someone, a party agreed to arbitration. It needs to look at the whole course of dealings, the whole record between all the parties and determining whether there was either a waiver in effect or who was the actual moving party that we go, we start out by going well beyond the contract in which an agreement was made. Is that right? I would say you have to. That's what the jurisprudence says. Otherwise, how do you look at the question of agency? How do you look at the question? I was suggesting you look at the, the intent of the parties about whether both intended to agree to arbitration as the method of dispute resolution. And here we have kind of a mixture of, we're going to look at the whole record and they kind of expected the agency must've included the authority to agree to arbitration as opposed to adjudication in a court. There are a lot of inferences that are being drawn here and just some disputed facts, which is I think why the question is also raised about whether maybe the question of arbitrability should go to a jury, but I'm a little troubled because I usually start in thinking about arbitration with the notion of what did the parties intend? Did they intend to agree to arbitration at a time in the past? And starting with a non-party it, I mean, I wonder is that the principle that you're espousing? I think when a non-party is compelled to arbitrate and they're a non-party non-signatory of the contract, they never intended to be part of it initially, but that's, that, that's not the issue. That's not what matters because the jurisprudence says you can bring in a non-signatory non-party and compelled them to arbitrate under these various theories. And we have all these conditions. They're all met, you know, with all due respect. As long as the two parties of the contract intend to bind another non-party to arbitration, that's enough. As long as the, I think what you're suggesting is if the other parties intended the other parties may or may not have intended it. It's always difficult to read into what their minds were. You have to look at the contract and look at all the other evidence that's admissible to make that determination. But I think here the record's really clear, very, very clear that this was a contract that was intended to bind both JRC and Jasmine. The record says that the facts say it, the documents say, everything about this case says it, you know, quite frankly, I viewed it as a very simple case. I hear what your honors are saying about the fact that, you know, we're trying to bind a non-party, but I think the law. So if everything were the same, I'm just trying to understand, you're asking us for, I think, to create a rule. And I'm trying to understand the contours of the rule and the consequences if everything were the same and Jasmine had just added in some document, we are not, we do not intend to be bound by anything in this contract. Would that be, would that make a difference? I don't know. I'd have to see it in the content. Well, it specifically said we do not intend to be bound by the arbitration clause. I suppose if there was some document out there that was written and it was properly put together and they said we don't intend to be bound by anything in this contract, then I suppose that would be the case. But that isn't the case that we have over here. No, I understand. But you're saying then that this third, this, the non-signatory, its intent is also important. Under this context, it's important because of the closeness and uniqueness to them. If you look at the body of law over here, you know, oftentimes that non-party that's being compelled to arbitrate, they really had nothing to do with the underlying contract. There's a great case, I think it's the Tinkari case. It's the one that involved the sailing yacht. And the owner of the yacht had absolutely nothing to do with the contract between the shipbuilder and the classification society. Absolutely nothing. And they were compelled to arbitrate in that case. Nothing. And that's a case where they derive a direct benefit. Counsel, your time has long expired. Thank you, Judge. Thank you. Mr. Krause, you have reserved three minutes for rebuttal. Thank you, Your Honor. I can certainly begin by agreeing with opposing counsel that this is a very simple case. It's a very simple case by looking at the fundamental black letter tenets of contract law in New York for which it's justly famous around the world. Take a look at the four corners of an agreement and go outside of it, only if one finds ambiguity here. If you look at the U.S. Supreme Court case in Waffle House, the court says, absent some ambiguity in that agreement, it is the language of the contract that defines the scope of disputes subject to arbitration, and nothing in the Federal Arbitration Act authorizes a court to compel arbitration of any issues. You point to the fact that Jasmine is not a party slash signatory to this contract as the source of clarity. That's really the bottom line. We have two arguments, Your Honor, in alternative. We agree that if JRC were exercising its authority as an agent for Jasmine, that Jasmine would be bound by this arbitration clause and as a primary abligor in the agreement. You agree here that there was actual authority. There was actual authority, but the question of whether they exercised it can be answered by ordinary contract interpretation. It's not possible to give meaning to the terms of this contract and hold consistently that JRC was acting either only as an agent or also as an agent and a primary obligor itself? Why isn't that a question of fact for the jury? Because one can simply look at the contract itself and read its plain meaning, Your Honor. It's not possible to construe it under New York interpretation law. You cannot make sense of the guarantee. You can't make sense of a half dozen other provisions, which we outline on page 19 of our brief. The district court dealt with the actual authority but didn't get to this issue. But you're saying, you're arguing we don't need to remand this because it's clear based on the structure of the guarantee. It's not just the structure of the guarantee. It's the actual plain meaning of the language of all of the terms of the contract. There is a half dozen of them that simply can't be squared with a three-party contract that we list on page 19 of our opening brief. And the guarantee itself makes no sense if JRC were acting in its own capacity. By the way, Trina and the district court have to treat JRC as bound as a primary obligor or they wouldn't have jurisdiction to arbitrate against JRC. So it would have to be a three-party contract, and that's not coherent on the plain meaning of the terms. Now, this is Trina, a very sophisticated party with counsel who drafted this, oversaw it, and approved it and controlled it. So I can't think of a clearer case in New York to establish the principle that we're going to enforce contracts as they're written. That's why I say it's simply as a matter of law. We don't have to look beyond the four corners, and that's what New York law provides. Now, on the question of direct benefits, Your Honor, you did ask whether Jasmine invoked the contract or not and whether it exploited it in the MAG portfolio standard for distinguishing between direct and indirect benefits is whether you exploit and thereby assume the agreement itself versus exploiting the mere contractual relations there. And our argument is that, in fact, it would have to thereby assume it, which means have a right to enforce it. So Jasmine can shout to the housetops, we're enforcing the contract, and they have no more right to enforce it under New York law than I would. So all of the things that opposing counsel points to that Jasmine allegedly did by way of enforcing the contract simply as a legal matter do not qualify as enforcing a contract. They can't because Jasmine lacked the right to do it under 14.4 where Trina drafted a clause, the sole purpose of which is, and it's dispositively so under Morris Diesel in this circuit, that when the parties write a third-party beneficiary clause that excludes third parties from the right to enforce it, that's the end of it. So as New York law, there is really no dispute that Jasmine lacked the right to enforce the agreement. If you look at all the cases in this Court's jurisprudence where a non-signatory, in fact, did have, was found to have direct benefits, I think you'll also find that they had the right to enforce it, whether they actually were suing on the contract or not. In all the cases, including Tenkara, the owners there would have had the right to enforce that agreement. Usually they explicitly exclude their party. That's why this is a bespoke contract drafted by the party in control, a sophisticated party with legal counsel, went out of its way to restrict the scope of the arbitration clause to between the parties and to include a third-party beneficiary clause that excludes Jasmine from having any rights under this agreement. And once again, I would say we don't even have to get into the direct benefits question of whether these are direct or indirect benefits to solve this case on basic New York law of interpretation. If you just look at the arbitration clause, it's clear that even if Jasmine were a direct beneficiary, that does not transform it into a party. The agency theory and direct benefits theory are separate theories. They're not the same. Thank you very much, Your Honor. Thank you. We'll reserve decision.